UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES D. HARDEN and J.H., a minor,

         Plaintiffs,

                     Case # 15-CV-646-FPG

v.

                     DECISION AND ORDER

BUFFALO PUBLIC SCHOOL DISTRICT,
DONALD OGILVIE, ELIZABETH GIANGRECO,
MARYBETH ZANGHI, and BARBARA REEVES,

         Defendants.

## INTRODUCTION

J.H., an at-risk student with disabilities in Buffalo Public School # 74, attempted to commit suicide twice in 2015: once on May 29 and again on June 3.[1] Both times, J.H. tried to use a microphone cord to strangle herself.

J.H. made these attempts in part because she suffers from depression; Defendants knew of J.H.'s diagnosis and, as a result, Marybeth Zanghi, a member of the Student Support Team and Committee on Special Education, drafted a safety plan for J.H.

After J.H.'s second suicide attempt, she was removed from school and placed on "medical leave instruction" by Zanghi and Principal Elizabeth Giangreco. J.H. stayed home, without instruction or assignments, for seven days. She was invited back to school for one hour per day, but declined the invitation. J.H. was ultimately assigned instruction on June 18 and received four days of teaching, totaling approximately six hours.

J.H. subsequently failed seventh grade and James D. Harden, J.H.'s father, filed the Complaint on her behalf, pro se, on July 20, 2015. *See* ECF No. 1. The Complaint appears to contain two claims. *See id.* at 4-5. Based upon the Complaint's allegations and Harden's pro se

---

[1] The Court takes these allegations from the Complaint, ECF No. 1, and accepts them as true. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

status, however, the Court finds that it contains three claims:[2] an *in loco parentis* claim under New York Law and two federal-law claims under the Individuals with Disabilities Education Act, (IDEA).

Defendants' Motion to Dismiss the Complaint, ECF No. 5, is currently before the Court.[3] The Court explains the applicable legal standard and then analyzes Plaintiffs' two IDEA claims, followed by their state-law claim. For the reasons stated, Defendants' Motion is GRANTED and Plaintiffs' Claims are DISMISSED.

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct. *Iqbal*, 556 U.S. at 678.

In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions,

---

[2] Language in the Complaint suggests that Plaintiffs alleged a Fourth Claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See* ECF No. 1 at 5 ("Each Defendant failed to train, supervise [personnel], implement and enforce procedural safeguards are effective [sic]. Said negligence and failure to supervise[] directly resulted in academic failure for [J.H.]"). The Court finds this language uniform with the rest of the claim, which alleges a cause of action under the Individuals with Disabilities Education Act (IDEA). Even if it was not, however, and Plaintiffs intended to allege a claim under *Monell*, such a claim would fail. Plaintiffs provide no facts to support their conclusory allegations. *Santos v. New York City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) ("Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff, [plaintiff's] claims against [the defendant] are dismissed with prejudice.").

[3] Plaintiffs never responded to Defendants' Motion; however, the Court must still analyze the merits of Defendants' Motion to determine if Plaintiffs' claims should be dismissed. *See McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000) (finding that the district court erred when it dismissed the complaint solely because plaintiff did not respond to defendant's motion to dismiss); *see also Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) ("Although plaintiff has not opposed the [defendant's] motion, failure to oppose a 12(b)(6) motion cannot itself justify dismissal of a complaint.").

deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

Finally, it is well established that the Court must construe pro se submissions liberally and read them "to raise the strongest arguments that they suggest." *Nicholas v. City of New York*, 15-CV-9592 (JPO), 2017 WL 2537293, at *2 (S.D.N.Y. June 12, 2017) (quoting *Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003)).

## DISCUSSION

### I. An Overview of the Legal Principles Governing Claims Under the IDEA

Under the IDEA, States receive federal funds if they provide a "free appropriate public education [(FAPE)] to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017) (citing 20 U.S.C. §§ 1401(3)(A)(i), 1412(a)(1)(A)). As the IDEA explains, a FAPE entails "both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Id.* at 748-49 (citing 20 U.S.C. §§ 1401(9), (26), (29)). An eligible child "acquires a 'substantive right' to such an education once a State accepts the IDEA's financial assistance." *Id.* at 749 (citing *Smith v. Robinson*, 468 U.S. 992, 1010 (1984)).

The IDEA calls for an "individualized education program" (IEP) to function as the "primary vehicle" for providing each child with the promised FAPE. *Id.* (citing *Honig v. Doe*, 484 U.S. 305, 311 (1988)). The IEP is crafted by an IEP team and spells out a personalized plan to meet all of the child's "educational needs." *Id.* (citing 20 U.S.C. §§ 1414(d)(1)(A)(i)(II)(bb), (d)(1)(B)).

If a dispute arises regarding any aspect of a child's FAPE, the IDEA contains administrative procedures through which parents may resolve those disputes. *Id.* First, a complaint filed by a parent triggers a "preliminary meeting." *Id.* (citing 20 U.S.C. § 1415(b)(6)).

3

A parent may then begin a mediation process, or pursue mediation in lieu of the preliminary meeting. *Fry*, 137 S. Ct. at 749 (citing 20 U.S.C. §§ 1415(e)-(f)(1)(A)). If no resolution is reached, the process continues to a "due process hearing" before an impartial hearing officer. *Id.* (citing 20 U.S.C. § 1415(f)(1)(A)). If a parent is unsatisfied with the hearing outcome, they may "seek judicial review by filing a civil action in state or federal court." *Id.* (citing 20 U.S.C. § 1415(i)(2)(A)).

Originally, under the IDEA's predecessor, the Education of the Handicapped Act, a child with a disability, or the child's parents, could challenge the adequacy of her education only through the IDEA, even if another statute provided relief for children with disabilities. *Id.* at 749-50. In response, Congress added an exhaustion requirement to the IDEA, currently codified at 20 U.S.C. § 1415(l):

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

*Id.* at 752. Under this provision, any child "seeking relief that is also available" under the IDEA must exhaust IDEA's administrative procedures even if the child seeks relief under a statute separate from the IDEA. *Id.* at 754.

To determine whether a plaintiff must exhaust the IDEA's administrative procedures before pursuing judicial review of their claim, a court must determine whether "the gravamen of [the plaintiff's] complaint charges, and seeks relief for, the denial of a FAPE." *Id.* at 758. To do so, a court must look to the substance of the allegations, and not whether they do or do not contain the acronyms FAPE or IEP, or the phrases contained in them. *Id.* at 755.

4

II.  **Plaintiffs' Two IDEA Claims Are Dismissed Because the Gravamen of Those Claims Charge and Seek Relief for the Denial of a FAPE and Plaintiffs Failed to Exhaust Administrative Remedies**

Here, the Court has no difficulty concluding that the gravamen of Plaintiffs' Second and Third claims seek relief for the denial of a FAPE. The Second Claim explains that J.H.'s medical leave was improper and denied her a FAPE. *See* ECF No. 1 at 5 ("[J.H.] was improperly removed from school and denied [a] free adequate public education."). The Third Claim follows a similar pattern: it alleges that the Defendants failed to implement an appropriate IEP, which denied J.H. a FAPE.

To be clear, the Court follows the instructions in *Fry* and does not conclude that the Second and Third Claims seek relief for the denial of a FAPE simply because they contain the phrase "free adequate public education" and the acronym "IEP." It is the substance of those claims that leads the Court to its conclusion. The Second Claim alleges that J.H.'s medical leave, imposed by Defendants, improperly denied her access to an education. Additionally, the Third Claim alleges that Defendants never implemented a plan to meet J.H.'s educational needs. Both of those Claims allege that the Defendants' actions led to an inadequate education for J.H., which is guaranteed under the IDEA. Even if those claims contained no mention of a "FAPE" or an "IEP," Plaintiffs would still be required to exhaust the IDEA's administrative procedures.

The Court also finds that Plaintiffs did not exhaust the IDEA's administrative remedies as required. The Complaint contains no allegations that Plaintiffs filed a complaint with the School or any other governing body. Consequently, under Section 1415(l), Defendants' Motion is GRANTED as to Plaintiffs' Second and Third Claims, and they are DISMISSED.

III.  **The Court Declines Supplemental Jurisdiction over Plaintiffs' State-law Claim**

Generally, federal courts should decline to retain jurisdiction over state-law claims when they dismiss all federal claims pursuant to a motion to dismiss or for summary judgment. *Testa v.*

*CareFusion*, 305 F. Supp. 3d 423, 437-38 (E.D.N.Y. 2018) (citing 28 U.S.C. 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over [state-law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction[.]")). Accordingly, Plaintiffs' First Claim is DISMISSED.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint, ECF No. 5, is GRANTED, the Complaint, ECF No. 1, is DISMISSED, and the Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: July 23, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court